UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HIT NOTION LLC,

     Plaintiff,

v.

SANDERS COLLECTION
INCORPORATED,

     Defendant.

Case No. 24-cv-10937

Honorable Robert J. White

## ORDER DENYING DEFENDANT'S MOTION TO QUASH AND FOR A PROTECTIVE ORDER

This case involves Plaintiff's claims for copyright and willful patent infringement, as well as the parties' competing claims for breach of contract. (ECF Nos. 1, 14).  Before the Court is Defendant's motion to quash a subpoena to Amazon.com, Inc. (Amazon) and for a protective order. (ECF No. 31).  The Parties fully briefed the motion and the Court will decide it without oral argument pursuant to Local Rule 7.1(f)(2).  For the following reasons, the Court denies the motion.

## I.    Background

Plaintiff filed this action on April 10, 2024. (ECF No. 1).  The case essentially involves (1) Plaintiff's copyright(s) and design patents with respect to a particular pillow product; (2) Defendant's alleged infringement of the copyright(s) and patents

via the advertising and sale of similar products; and (3) the parties' competing claims that the other breached a settlement agreement that previously resolved a similar infringement dispute regarding the same or similar products. (ECF Nos. 1, 14).

Plaintiff subpoenaed Amazon on June 6, 2025, requesting production, subject to the protective order in this case (ECF No. 23), of the following:

> 1. Documents sufficient to show all units sold of each Listing from February 17, 2020 to the present.
>
> 2. Documents sufficient to show the purchase price of each Listed Product for all sales between February 17, 2020 to the present.
>
> 3. Documents sufficient to show any fees, discounts, or proceeds associated with all sales of any Listed Product between February 17, 2020 to the present.
>
> 4. Documents sufficient to show any keyword advertising efforts by Sanders (or its affiliates including but not limited to Nestl, Clara Clark, and TheComfortZone) associated with any Listing.
>
> 5. Documents sufficient to show any keyword advertising efforts by Sanders (or its affiliates including but not limited to Nestl, Clara Clark, and TheComfortZone) associated with the term, "husband pillow."
>
> 6. Documents and information pertaining to any and all advertising associated with any Listing which may be found in Amazon [records].

(ECF No. 31-2, PageID.316-17).

The subpoena defined "Listing" and "Listed Product" as including over 100 different specific product/catalog identification codes for each of two different Amazon sellers affiliated with Defendant. (ECF No. 31-2, PageID.314-15).

2

On June 30, 2025, Defendant moved (1) to quash the Amazon subpoena and (2) for a protective order "precluding Plaintiff from making similar requests on [Amazon] or other non-party e-commerce platforms." (ECF No. 31, PageID.271). Defendant argues that (1) it has standing to quash the Amazon subpoena based on a personal interest in the records sought; (2) the subpoena should be quashed because it seeks sales data that Defendant already produced through discovery; and (3) the subpoena should be quashed because none of the listings identified therein "offer[] for sale an accused product," rendering the requested sales and advertising information completely irrelevant to the parties' dispute and the currently-pled claims. (ECF No. 31, PageID.2380-88).

In response, Plaintiff first counters that it subpoenaed the records from Amazon based on its owner's well-founded belief that Defendant's self-reported sales are inaccurate or incomplete. (ECF No. 32, PageID.411-12).  Plaintiff argues that "the only way forward is to get the information from Amazon" because of Defendant's apparent inability or reluctance to independently produce its full and accurate sales records. (ECF No. 32, PageID.412-14).  Plaintiff also argues that the information sought from Amazon is relevant and not overbroad. (ECF No. 32, PageID.414-20).  Lastly, Plaintiff argues that Defendant's cited cases to establish standing are distinguishable and fail to do so here. (ECF No. 32, PageID.42-21).

In reply, Defendant argues that (1) it already produced sales data in response to Plaintiff's demands in this case, (2) Plaintiff's position that Defendant's provided data is inaccurate or incomplete is unfounded and wholly speculative, and (3) all the information sought relates to non-infringing products and is irrelevant here. (ECF No. 468).

## II.   Legal Standards

"The decision to quash a subpoena is . . . within the sound discretion of the district court." *Thomas v. City of Cleveland*, 57 F. App'x 652, 654 (6th Cir. 2003) (unpublished).  "A motion to quash or modify a subpoena is governed by Fed. R. Civ. P. 45(d)(3)." *Malibu Media, LLC v. Doe*, No. 15-10307, 2015 U.S. Dist. LEXIS 53784, at *2-7 (E.D. Mich. Apr. 24, 2015).  "First, a court 'must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.' Fed. R. Civ. P. 45(d)(3)(A)." *Id.*  "Further, a court 'may, on motion, quash or modify the subpoena if it requires: (i) disclosing a trade secret or other confidential research, development, or commercial information; or (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.' Fed. R. Civ. P. 45(d)(3)(B)." *Id.*

4

"The party seeking to quash the subpoena bears the burden of demonstrating that the requirements of Rule 45 are satisfied." *Id.*  And "a party does not have standing to quash a subpoena directed to a nonparty unless the party claims a privilege, proprietary interest, or personal interest in the information sought by the subpoena.  The party seeking to quash a subpoena bears a heavy burden of proof." *Id.*

Further, the scope of discovery for a subpoena under Fed. R. Civ. P. 45 is the same as under Fed. R. Civ. P. 26(b)(1). *State Farm Mut. Auto. Ins. Co. v. Elite Health Ctrs., Inc.*, 364 F. Supp. 3d 758, 767 (E.D. Mich. 2018).  Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," except that the Court must consider proportionality factors, including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See also Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253-56 (S.D. Oh. May 6, 2011) (granting the plaintiffs' motion to quash third-party subpoenas seeking the plaintiffs' employment and scholastic records because the subpoenas sought largely irrelevant information and were otherwise overly broad).

When "an objection to the relevance of the sought discovery is raised, the party seeking discovery must demonstrate that the requests are relevant to the claims or defenses in the pending action." *Gazvoda v. Sec'y of Homeland Sec.*, No. 15-14099, 2017 U.S. Dist. LEXIS 5936, at *12 (E.D. Mich. Jan. 17, 2017). If the requesting party meets that burden, the objecting party must show why the request is otherwise improper. *Id.*

Courts must also limit discovery if it (1) is unreasonably cumulative or duplicative; (2) can be obtained from another source that is more convenient, less burdensome, or less expensive; (3) is sought by a party who "had ample opportunity to obtain the information by discovery in the action"; or (4) is outside the scope permitted by Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C). "Under this principle, courts in this circuit have repeatedly denied motions to compel discovery and quashed subpoenas directed to non-parties where the discovery sought was obtainable from a party to the litigation." *Baumer v. Schmidt*, 423 F. Supp. 3d 393, 408-09 (E.D. Mich. 2019) (collecting cases).

Lastly, "[u]nder Federal Rule of Civil Procedure 26(c)(1), a district court may grant a protective order preventing the production of discovery to protect a party or entity from 'annoyance, embarrassment, oppression, or undue burden or expense.'" *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 235 (6th Cir. 2016). "To sustain a protective order under Rule 26(c), the moving party must show good cause for

protection from one (or more) harms identified in Rule 26(c)(1)(A) with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Id.* at 236 (internal quotation marks and citation omitted).  "Good cause exists if specific prejudice or harm will result from the absence of a protective order." *Id.* (internal quotation marks and citation omitted).  Additionally, a district court is tasked with balancing "the right to discovery with the need to prevent fishing expeditions." *Id.* at 236-237 (internal quotation marks and citation omitted).

## III.   Analysis

### A.   Standing

As stated, "a party does not have standing to quash a subpoena directed to a nonparty unless the party claims a privilege, proprietary interest, or personal interest in the information sought by the subpoena." *Malibu Media*, 2015 U.S. Dist. LEXIS 53784 at *2-7.  Defendant argues it has a personal interest in the subpoenaed information sufficient to confer standing.  The Court agrees.

"[A] personal interest may arise in a variety of contexts, including 'employment records held by a subpoenaed non-party' or 'banking records of a party in the possession of a financial institution.'" *Blumberg v. Ambrose*, No. 13-15042, 2014 U.S. Dist. LEXIS 142781, at *8 (E.D. Mich. Oct. 7, 2014) (citations omitted). Here, Defendant certainly has a personal interest in its own commercial information concerning sales and advertising, even if in the possession of a business partner

(Amazon). *See Blumberg*, 2014 U.S. Dist. LEXIS 142781 at *9 ("In this case, the subject matter of the subpoenas at issue relates to contracts, agreements, and payment information and records between Defendants and their clients.  Given that this commercial information pertains to Defendants and their customers, Defendants have a personal interest in the subpoenaed documents, and thus standing to challenge the subpoenas."); *Trinity, Inc. v. Staffing*, No. 22-10319, 2023 U.S. Dist. LEXIS 231723, at *5-6 (E.D. Mich. Dec. 6, 2023) ("[C]ourts have held that a personal interest in one's personal emails, phone records, employment records, banking records, or academic records can confer standing.").

To the extent Plaintiff argues that *Trinity* and *Blumberg* are distinguishable and unsupportive of Defendant's standing here, the Court disagrees.  Both cases conferred standing to challenge requests, comparable to that here, for parties' personal records in another's possession.  *Blumberg* in particular involved the defendants' commercial records with its customers, which is clearly analogous to Defendant's sales and advertising records with Amazon here.  And Plaintiff critically fails to even address these case's discussion of standing.

Plaintiff also seemingly argues that Defendant lacks standing because (1) "there is protective order in place to protect the information that [Defendant] may deem to be confidential" and (2) "the information [Plaintiff] seeks is sales and advertising information that [Defendant] should have produced." (ECF No. 32,

PageID.421).  But the Court concludes that these factors are relevant to the merits of Defendant's challenge rather than its standing, and Plaintiff provides no explanation or caselaw showing otherwise. *See United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.") (cleaned up).  Accordingly, the Court finds Defendant's stated interest here is personal and confers standing to challenge the Amazon subpoena.

## B.    Relevance

Defendant essentially argues that all the records sought by the Amazon subpoena are irrelevant because none of the listings identified therein relate to an "accused" or "infringing" product.  According to Defendant, the records instead concern only its "redesigned" pillow and other products distinguishable from the design patents at issue here.

Because Defendant objects to the relevance of the sought discovery, Plaintiff "must demonstrate that the requests are relevant to the claims or defenses in the pending action." *Gazvoda*, 2017 U.S. Dist. LEXIS 5936 at *12.  "Fed. R. Evid. 401—deeming evidence relevant if it has '*any* tendency to make a fact more or less probable'—sets an extremely low bar." *In re Ford Motor Co. Spark Plug & 3-Valve*

*Engine Prods. Liab. Litig.*, 98 F. Supp. 3d 919, 925 (N.D. Oh. 2014) (emphasis in original); *see also Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 309 (W.D. Tenn. 2008) ("Relevancy for discovery purposes is construed broadly.  Discoverable evidence need not be admissible at trial; rather, material is discoverable if it is 'reasonably calculated to lead to the discovery of admissible evidence.'") (quoting Fed. R. Civ. P. 26(b)(1)).

Responding to Defendant's contention of irrelevance, Plaintiff argues as follows:

> [Defendant] argues that neither it nor Amazon should have to report sales information for certain products that do not seem to have the patented designs.  This is mistaken, and [Defendant] does not acknowledge [Plaintiff]'s theory of infringement – which [Plaintiff] has expressed several times.  [Plaintiff] alleges that [Defendant] is using [Plaintiff]'s patented designs *in its advertising*, and it is offering to sell the [Plaintiff's] patented designs *in its advertising*.  In doing so, [Defendant] may later actually sell a different product, sometimes in a bait-and-switch scenario that misleads the customer.  But regardless of what [Defendant] ends up selling, it still infringes and it still damages [Plaintiff] by stealing a sale from [Plaintiff] by attracting a customer with the [Plaintiff's] patented designs in [Defendant's] advertising.

(ECF No. 32, PageID.414-15) (emphasis added).  Plaintiff elaborates that "sales information about the redesigned pillows is now and always has been relevant" because Defendant "was always liable for sales of the Redesigned pillow if [Defendant] sold it based on [Defendant's] infringing use or offer for sale of the patented designs." (ECF No. 32, PageID.417).

Plaintiff argues further that the requested keyword and other advertising information in particular is relevant to both infringement generally and the willfulness thereof because it would reveal whether Defendant paid Amazon to advertise Defendant's products when customers searched keywords related to Plaintiff's patented product, such as "Husband Pillow" and "Hit Notion."  According to Plaintiff, the advertising information is therefore relevant to how Defendant "often uses [Plaintiff]'s patented designs in its advertising" and "whether [Defendant] is using and offering to sell the patented designs." (ECF No. 32, PageID.418-19).  And Plaintiff argues that the information sought is additionally relevant because it intends to amend its complaint to add infringement claims related to a to-be-issued utility patent covering Defendant's redesigned pillows.

As an initial matter, Defendant cites *Braxton v. Heritier*, No. 14-12054, 2015 U.S. Dist. LEXIS 115295 (E.D. Mich. Aug. 31, 2015), for the position that Plaintiff cannot obtain discovery irrelevant to its currently-pled claims.  In *Braxton*, the plaintiff sought email records "in order to explore a possible claim against [a] non-party . . . or others," and the district court stated that "such extraneous discovery is not permitted by the Rules [of Federal Procedure]." *Id.* at *4.  The Court ultimately granted the motion to quash with respect to the email records because "the information sought is not relevant to the present claims or defenses in this action." *Id.* at *5.

Following *Braxton*, the Court here concludes that Plaintiff cannot claim relevance to potential future infringement claims not currently pled and based on a yet-to-be-issued utility patent.   Accordingly—and specifically considering Plaintiff's implicit admission that the listings at issue all involved the sale of physical products distinguishable from its design patents governing the current claims[1]— sales and advertising information specific to Defendant's redesigned pillow and similar products cannot be relevant as evidence that Defendant sold an infringing product.

However, the question remains whether—consistent with Plaintiff's asserted theory of infringement—Defendant's advertising practices with respect to the redesigned pillow and related products constituted an unauthorized offer to sell or use Plaintiff's patented designs. *See* 35 U.S.C. § 271(a) ("whoever without authority makes, uses, offers to sell, *or* sells any patented invention . . . infringes the patent") (emphasis added).

Concerning this question, authority within this circuit indicates that a defendant uses or offers to sell a patented design when taking action "to generate

---

[1] *See* ECF No. 32, PageID.414-15 ("[Defendant] may later actually sell a different product, sometimes in a bait-and-switch scenario that misleads the customer.  But regardless of what [Defendant] ends up selling, it still infringes and it still damages [Plaintiff] by stealing a sale from [Plaintiff] by attracting a customer with the [Plaintiff's] patented designs in [Defendant's] advertising."); *see also infra* footnote 2 (Plaintiff's brief argument that the listings at issue include images and descriptions of its patented designs is conclusory an unsupported by Plaintiff's cited links).

interest in a potential infringing product to the commercial detriment of the rightful patentee." *Donnelly Corp. v. Reitter & Schefenacker GmbH & Co.*, 189 F. Supp. 2d 696, 704 (W.D. Mich. 2002). In *Donnelly*, the district court determined that a defendant used an accused product by displaying it in a commercial setting with the intention to generate sales, even if no actual sales materialized. *Id.*; *see also 3D Systems v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1379 (Fed. Cir. 1998) (letters constituted offer for sale where they included "a description of the allegedly infringing merchandise and the price at which it can be purchased").

As stated, Defendant argues that the requested sales and advertising information is completely irrelevant because none of the listings at issue depicted, described, or otherwise related to Plaintiff's actual patented product or specific designs. The crux of Plaintiff's theory, however, is that Defendant's advertising keywords like "Husband Pillow" and "Hit Notion" constitute an implicit use of or offer to sell Plaintiff's patented designs, even if the actual products displayed and sold via the listings at issue were distinguishable from said designs.

The Court acknowledges that none of the listings appear to involve any description or display of Plaintiff's patented product or designs, which would unquestionably constitute an infringing use or offer to sell under the aforementioned cases. That said, considering the broad construction of what constitutes relevant evidence, the Court concludes that Plaintiff meets the extremely low burden

necessary to establish relevance in this case. *See also infra* footnote 3 (although discoverable, the records at issue may ultimately be inadmissible at later stages of the case).

First, to the extent Defendant used "Husband Pillow" as a keyword in its advertising of any redesigned pillow, this could constitute an implicit use of Plaintiff's design patent to generate interest in Defendant's own products to the commercial detriment of Plaintiff, the rightful patentee.  Specifically, customers interested in Plaintiff's specific designs and patented product and therefore searching "Husband Pillow," based on the purported advertising practice, would be directed to Defendant's listings.

Consistent with this analysis, Plaintiff reasonably argues that Defendant's efforts effectively steal sales of Plaintiff's patented product by attracting customers already interested in Plaintiff's specific designs.  And Defendant provides no authority specifically countering Plaintiff's admittedly-unique theory of infringement.[2]  Given these circumstances, Plaintiff has met the low burden

---

[2] Defendant cites only one case in refuting Plaintiff's theory of infringement, *Atlantic Mut. Ins. Co. v. Brotech Corp.*, 857 F. Supp. 423, 429 (E.D. Pa. 1994).  But this case is both nonbinding and distinguishable from the instant dispute.  Specifically, the district court never explicitly decided whether certain advertising practices can constitute an implied use and sustain claims for infringement; instead, it merely addressed whether a specific indemnification agreement applying to "advertising injury" covered claims of patent infringement. *Id.* at 426-30.  And though portions of the Court's underlying reasoning support Defendant's position, *see, e.g., id.* at 429 ("The mere advertising of a patented product would not support a claim of patent

necessary to establish relevance of the requested advertising information central to its theory.   Further, because the Court concludes that Plaintiff's theory of infringement is viable at this stage, the complete sales records associated with the listings at issue are also relevant to Plaintiff's ultimate damages.[3]

Moreover, the purported advertising practice is additionally relevant to the extent it exhibits general bad faith supporting increased damages for willful infringement. *See Mich. Motor Techs. LLC v. Volkswagen Aktiengesellschaft*, 472 F. Supp. 3d 377, 382 (E.D. Mich. 2020) (increased damages for willful infringement "generally reserved for egregious cases of culpable behavior" and "are appropriate only for conduct that is willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate") (cleaned up).   Plaintiff here makes the reasonable contention that Defendant engaged in a deliberate, bad-faith effort through its advertising to divert potential customers of Plaintiff's patented product to Defendant's own competing products, and the Court concludes this sufficient to meet Plaintiff's minimal burden of relevance.

---

infringement and the advertising of a patented product is not an element or a patent infringement claim."), these premises contradict authority within this circuit, *see Donnelly*, 189 F. Supp. 2d at 704 (a defendant used an accused product by displaying it in a commercial setting with the intention to generate sales, even if no actual sales materialized—i.e., by merely advertising the product).

[3] The records at issue may very well be inadmissible at later stages of this case.   But where Plaintiff makes a reasonable claim of relevance connected to what appears for now as a viable theory of infringement, the information is at least discoverable.

15

To the extent Defendant argues that *Mich. Motor Techs.* supports its argument of irrelevance, the Court disagrees.   This case dismissed a claim for willful infringement as insufficiently pled under Fed. R. Civ. P. 12(b)(6). *Mich. Motor Techs.*, 472 F. Supp. 3d at 379, 382-85.  In doing so, the Court stated that "[a] plaintiff plead[ing] only that the defendant[] w[as] aware of the patents and nothing else . . . is not enough to sustain a willful infringement claim for enhanced damages." *Id.* at 384.  And the Court concluded that the plaintiff's claims were deficient for this very reason. *Id.* at 384-85.

Here, in contrast, Defendant never moved to dismiss Plaintiff's willful infringement claims as insufficiently pled, thus allowing them to proceed to discovery.  Accordingly, whether the facts of this case satisfy the elements for willful infringement should be addressed only after the completion of discovery, either in resolving a motion for summary judgment or at trial.  Returning to the limited issue being decided at this time, the Court reiterates that Plaintiff has established relevance at this stage given its reasonable contention that Defendant engaged in a deliberate, bad-faith advertising effort connected to Plaintiff's theory of infringement in this case.

In sum, the Court concludes that Plaintiff establishes relevance with respect to all the records sought in the Amazon subpoena.  Since Plaintiff meets its burden on this issue, Defendant must show why the request is otherwise improper. *See*

*Gazvoda*, 2017 U.S. Dist. LEXIS 5936 at *12.  Accordingly, the Court now turns to Defendant's alternate argument that the subpoena should be quashed because it seeks sales data that Defendant already produced through discovery.

## C.    Duplication of Records Obtainable from Defendant

As stated, courts must limit discovery if it is unreasonably cumulative or duplicative; can be obtained from another source that is more convenient, less burdensome, or less expensive; is sought by a party who had ample opportunity to obtain the information by discovery; or is outside the scope permitted by Rule 26(b)(1). Rule 26(b)(2)(C).  "Under this principle, courts in this circuit have repeatedly denied motions to compel discovery and quashed subpoenas directed to non-parties where the discovery sought was obtainable from a party to the litigation." *Baumer*, 423 F. Supp. 3d at 408-09 (collecting cases).

Here, however, the Court concludes that the subpoenaed records are not *unreasonably* duplicative under the circumstances present and rejects Defendant's argument regarding its prior production of the requested sales information.  To support this decision, *Blumberg* is instructive.  Specifically, the *Blumberg* Court denied a motion similar to Defendant's here, reasoning in relevant part as follows:

> Lastly, Defendants argue in their supplemental brief that the third-party camps would face an unnecessary burden in responding to the subpoenas, since the information requested is already obtainable from Defendants.  Aside from this conclusory statement, Defendants offer no substantiation for their contention of burden.  *In any event, there is no better assurance that all requested documents are produced*

17

*than to seek them from parties with no stake in the outcome of this litigation.*

Accordingly, the Court denies Defendants' request to quash the third-party subpoenas.

*Blumberg*, 2014 U.S. Dist. LEXIS 142781 at *10 (emphasis added; citation omitted).

Likewise, the Court concludes here that there is no better assurance that all the relevant records will be produced than to seek them from a third party, Amazon, with no stake in the case. And this reasoning is particularly applicable given Plaintiff's concerns with Defendant's own production to date.

The Court relatedly disagrees with Defendant's argument that Plaintiff's concerns are too speculative to warrant its requests. Rather, Plaintiff provides a declaration from Jason Berke, its President and CEO, made under penalty of perjury and providing numerous factors contributing to his belief that Defendant's self-produced sales are understated. (*See* ECF No. 32-1, PageID.425-27). Admittedly, some of Berke's rationales are minimally if at all persuasive—like Defendant's defense in this case not making sense unless its reported sales are inaccurate, in particular. But the Court concludes that Berke's various rationales, considered together, provide a reasonable basis to support his belief and warrant third-party discovery, even if duplicative.

Further, any concerns about harm to Defendant from the disclosure of its confidential and commercially-sensitive information are appropriately mollified

given the protective order currently governing discovery.  And there is no financial or related burden on Defendant where Amazon is responsible for producing the records.  The Court relatedly finds it telling that Amazon, the entity actually burdened by the subpoena, has not filed its own motion to quash here.

For all these reasons, the Court concludes that Plaintiff's requested third-party discovery is warranted despite any duplication of records Defendant already produced.  Lastly, because the requested third-party discovery is warranted in this case, the Court concludes that good cause does not exist for Defendant's proposed protective order.

* * *

For the reasons given, the Court ORDERS that Defendant's motion to quash and for a protective order (ECF No. 31) is DENIED.

Dated: February 12, 2026                              s/Robert J. White
                                                      Robert J. White
                                                      United States District Judge